O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SUSAN PATTERSON<br>Plaintiff,<br>v.<br><br>RELIANCE STANDARD LIFE<br>INSURANCE COMPANY;<br>REDLANDS COMMUNITY<br>HOSPITAL VOLUNTARY GROUP<br>LIFE INSURANCE PLAN<br><br>Defendants. | Case No.<br>EDCV 13-00211 JGB (OPx)<br><br>**ORDER GRANTING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY ADJUDICATION** |

Before the Court is Plaintiff's Motion for Summary Adjudication to Establish Defendant Reliance Standard Life Insurance Company's Liability to Pay Benefits. (Doc. No. 19.)  After considering the papers timely filed and the arguments presented at the November 18, 2013 hearing, the Court GRANTS Plaintiff's Motion for Summary Adjudication.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   BACKGROUND

**A.   Procedural Background**

Plaintiff Susan Patterson filed her Complaint on February 1, 2013 naming Reliance Standard Life Insurance Company ("Reliance Standard") and Redlands Community Hospital Voluntary Group Life Insurance Plan as Defendants. (Doc. No. 1.) On September 30, 2013, the Court approved the parties' stipulation to file the First Amended Complaint ("FAC"). (Doc. Nos. 17, 18.) On October 30, 2013, Reliance Standard and Redlands Hospital filed their respective answers. (Doc. Nos. 30, 31.)

Plaintiff filed her Motion for Summary Adjudication on October 17, 2013. (Doc. No. 19.) In support of her Motion, Plaintiff filed:

- Plaintiff's Statement of Uncontroverted, Material Facts ("Pl. SUF," Doc. No. 19-2);

- Declaration of Glenn R. Kantor ("Kantor Decl.," Doc. No. 20); and

- Declaration of Alan E. Kassan ("Kassan Decl.," Doc. No. 21) attaching Exhibit 1.

On October 28, 2013, Reliance Standard filed its Opposition to Plaintiff's Motion.  (Doc. No. 26.)  In support of its Opposition, Reliance Standard filed:

- Defendant Reliance Standard's Statement of Genuine Disputes of Material Fact ("Def. SGD," Doc. No. 27);

- Declaration of Peter Sailor ("Sailor Decl.," Doc. No. 28) attaching Exhibits 1-11; and

- Defendant Reliance Standard's Objections to Evidence ("Def. Obj.," Doc. No. 29).

On November 4, 2013, Plaintiff filed her Reply. (Doc. No. 32.)

**B.   First Amended Complaint**

In her FAC, Plaintiff alleges that her sister, Cara Dietrich, was employed by Redlands Community Hospital ("Redlands Hospital").  (FAC, ¶ 6.)  As a benefit of her employment, Ms. Dietrich was afforded the opportunity to purchase Voluntary Group Life Insurance. (Id.)  In 2006, Ms. Dietrich applied for Voluntary Group Life Insurance in the amount of $260,000.  (FAC, ¶ 7.)  Reliance Standard is the insurer of the benefits under the Life Insurance Plan.  (FAC, ¶ 3.)  From October 2006 through her death in March 2010, the correct amount of premium payments for her voluntary

life insurance coverage were deducted from her
paycheck.  (FAC, ¶ 7.)

     Ms. Dietrich passed away in March 2010.  (FAC, ¶
8.)  Subsequently, Plaintiff submitted a claim for
benefits which was denied on February 9, 2011.  (Id.)
Reliance Standard denied Plaintiff's claim because at
the time of the application, Reliance Standard had not
received proof of Ms. Dietrich's good health.  (Id.)
Plaintiff timely appealed the denial of benefits.
(FAC, ¶ 9.)  On July 22, 2011, Reliance Standard denied
the appeal.  (Id.)

     Plaintiff's action arises under the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29
U.S.C. § 1132.  Plaintiff requests relief in the form
of payment of life insurance proceeds in the amount of
$260,000, disgorgement of profits from Defendant's use
of life insurance proceeds rightfully belonging to
Plaintiff, attorney's fees and costs, and payment of
prejudgment and post-judgment interests allowed under
ERISA.  (See FAC.)

1

## II. LEGAL STANDARD[1]

2

3      Federal Rule of Civil Procedure 56 empowers the
4  Court to enter summary judgment on factually
5  unsupported claims or defenses, and thereby "secure the
6  just, speedy and inexpensive determination of every
7  action."  Celotex Corp. v. Catrett, 477 U.S. 317, 325
8  (1986).  Summary judgment is appropriate if the
9  "pleadings, depositions, answers to interrogatories,
10  and admissions on file, together with the affidavits,
11  if any, show that there is no genuine issue as to any
12  material fact and that the moving party is entitled to
13  judgment as a matter of law."  Fed. R. Civ. P. 56(c).
14  A fact is material when it affects the outcome of the
15  case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
16  248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th
17  Cir. 1997).

18

19      The party moving for summary judgment bears the
20  initial burden of establishing an absence of a genuine
21  issue of material fact.  Celotex, 477 U.S. at 323.
22  This burden may be satisfied by either (1) presenting
23  evidence to negate an essential element of the non-
24  moving party's case; or (2) showing that the non-moving
25  party has failed to sufficiently establish an essential
26  element to the non-moving party's case.  Id. at 322-23.

27      [1] Unless otherwise noted, all references to "Rule"
refer to the Federal Rules of Civil Procedure.

28

Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." Id. at 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving party's claim. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).

However, where the moving party bears the burden of proof at trial, the moving party must present compelling evidence in order to obtain summary judgment in its favor. United States v. One Residential Property at 8110 E. Mohave, 229 F. Supp. 2d 1046, 1047 (S.D. Cal. 2002) (citing Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998) ("The party who has the burden of proof on a dispositive issue cannot attain summary judgment unless the evidence that he provides on that issue is conclusive.")). Failure to meet this burden results in denial of the motion and the Court need not consider the non-moving party's evidence. One Residential Property at 8110 E. Mohave, 229 F. Supp. 2d at 1048.

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.  The non-moving party does not meet this burden by showing "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The United States Supreme Court has held that "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Anderson, 477 U.S. at 252.  Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.  When ruling on a summary judgment motion, the Court must examine all the evidence in the light most favorable to the non-moving party. Celotex, 477 U.S. at 325.  The Court cannot engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the jury. Anderson, 477 U.S. at 255.  Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. See Schneider v. TRW, Inc., 938 F.2d 986, 990-91 (9th Cir. 1991).

### III. DISCUSSION

**A.   Evidentiary Objections**

The majority of Reliance Standard's objections to Plaintiff's evidence are on the grounds that they are irrelevant, speculative, or constitute an improper legal conclusion.  (<u>See</u> Def. Obj.)  "Objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here.  <u>Burch v. Regents of Univ. of California</u>, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); <u>see</u> <u>Anderson</u>, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted.").  Thus, the Court does not rule on any of the parties' relevance objections or objections as to improper legal conclusions.

Reliance Standard also objects to some of Plaintiff's facts on the ground that they mischaracterize the evidence.  Plaintiff alleges that Ms. Dietrich "exercised her right under the Policy to receive . . . Supplemental Life insurance benefits in the amount of $260,000." (Pl. SUF, ¶ 4.)  Plaintiff

1    cites to the Group Benefit Enrollment Form that Ms.

2    Dietrich completed for basic and supplemental life

3    insurance coverage in support of that assertion.  (Exh.

4    1 to Kassan Decl., RS0103, RS0147.)[2]  Therefore, the

5    evidence submitted demonstrates that Ms. Dietrich

6    completed the application for Supplemental Life

7    insurance coverage.  The dispute is whether merely

8    completing the Group Benefit Enrollment Form is

9    sufficient to demonstrate that Ms. Dietrich exercised

10   her right to receive the supplemental life insurance

11   coverage.

12

13       Reliance Standard also objects to the evidence

14   cited in support of Plaintiff's assertion that Ms.

15   Dietrich met all premium obligations from October 2006

16   to her death in March 2010.  (Pl. SUF, ¶ 22.)  Reliance

17   Standard objects that Plaintiff mischaracterizes the

18   evidence cited in support of that fact.  (Def. Obj., ¶

19   22.)  The evidence Plaintiff cites in support of her

20   assertion is Reliance Standard's letter to Plaintiff

21   upholding its decision to deny her claim for

22   supplemental life insurance benefits, in which Reliance

23   Standard lists representations Plaintiff made in her

24   appeal request, including her statement that Ms.

25   Dietrich made the premium payments every pay period

26   _____

27       [2] Evidence denoted by the initials "RS" refer to the
     numbered pages in the insurance claim file, which are
28   submitted by the parties in support of their papers.

from October 2006 to her death in March 2010.  (Exh. 1
to Kassan Decl., RS0144-0149.)

　　　"When evidence is not presented in an admissible
form in the context of a motion for summary judgment,
*but it may be presented in an admissible form at trial,*
a court may still consider that evidence." <u>Burch v.</u>
<u>Regents of Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1120
(E.D. Cal. 2006) (citing <u>Fraser v. Goodale</u>, 342 F.3d
1032, 1037 (9th Cir. 2003)) (emphasis in original).
Here, the Court finds that evidence of Ms. Dietrich's
payment of premiums can be introduced in an admissible
form at trial.  Plaintiff claims that the premium
payments were taken from Ms. Dietrich's paychecks every
pay period since her October 2006 initial enrollment
application through the date of her death in March
2010.  (Exh. 1 to kassan Decl., RS0146.)  Therefore,
Ms. Dietrich's payroll record can be presented at trial
to demonstrate that she made the premium payments on
the supplemental insurance benefits plan.  In addition,
Reliance Standard does not provide any evidence to
demonstrate that Ms. Dietrich did not make premium
payments for the supplemental insurance benefits
coverage.  Therefore, the court overrules Reliance
Standard's objection as to Plaintiff's evidence of Ms.
Dietrich payment of premiums.

Reliance Standard objects to evidence Plaintiff cites in support of her assertion that "[t]here is no evidence in any of the records produced by Reliance Standard to suggest that Ms. Dietrich was ever asked to provide evidence of insurability at the time of her application, or any time thereafter." (Pl. SUF, ¶ 8.) Reliance Standard also objects to Plaintiff's assertion that she explained to Reliance Standard "that her sister was in excellent health at the time she enrolled for the supplemental insurance . . . ." (Pl. SUF, ¶ 16.) Since the Court does not rely on these facts to reach its decision, the Court does not rule on Reliance Standard's objection as to the evidence cited in support of these facts.

Finally, Reliance Standard objects to statements in the Declaration of Alan E. Kassan and the Declaration of Glenn R. Kantor on the basis that these statements constitute hearsay. (Def. Obj. at 10-12.)  Since the Court does not rely on these statements in reaching its decision, the Court does not rule on Reliance Standard's hearsay objections.

**B.   Uncontroverted Facts**

Both sides cite facts that are not relevant to resolution of the Motion.  To the extent certain facts

are not mentioned in this Order, the Court has not
relied on them in reaching its decision.  The Court
finds the following material facts are supported
adequately by admissible evidence and are
uncontroverted.  They are "admitted to exist without
controversy" for the purposes of this Motion.  L.R. 56-
3; see generally Fed. R. Civ. P. 56.

### 1.   The Insurance Policy

    In 2003, Reliance Standard issued group policy
number GL 134915 (the "Plan" or "Policy") to Redlands
Hospital.  (Exh. 1 to Sailor Decl., RS0001.)  Redland
Hospital's Group Benefit Enrollment Form specifies that
it provides basic life insurance to all eligible
employees.  (Exh. 4 to Sailor Decl., RS0103.)  In
addition, supplemental life insurance is available to
"all eligible employees on a voluntary basis, through
after tax payroll deductions." (Id.)  The Policy
specifies a waiting period of 90 days of continuous
employment for employees in the eligible class.  (Exh.
1 to Kassan Decl., RS0009.)

    The Plan provides:
     If an eligible person pays a part of the
     premium, he/she must apply in writing for the
     insurance to go into effect.  He/she will

12

become insured on the date stated on the
Schedule of Benefits, except that the
insurance will go into effect: (1) on the date
he/she applies, if he/she applies within
thirty-one (31) days of the date he/she is
first eligible; or (2) on the date we approve
any required proof of good health. We require
proof of good health if a person applies: (a)
after thirty-one (31) days from the date
he/she first becomes eligible . . .

(Exh. 1 to Sailor Decl., RS0015.)  The policy states
that it is "delivered in California and is governed by
its laws."  (Exh. 1 to Kassan Decl., RS0001.)

The Plan contains an incontestability clause which
states, in part:

Any statement made in your application will be
deemed a representation, not a warranty.  We
cannot contest this Policy after it has been in
force for two (2) years from the date of issue,
except for non-payment of premium.

(Id. at RS0013.)

### 2.  Ms. Dietrich's Employment

Ms. Dietrich commenced her employment with Redlands
Hospital on June 12, 2006.  (Exh. 1 to Kassan Decl.,

1   RS0147.)   Through her employment, Ms. Dietrich was
2   eligible to apply for life insurance coverage under the
3   Policy.  (Exh. 1 to Kassan Decl., RS0147; Sailor Decl.,
4   ¶ 6.)  On October 30, 2006, Ms. Dietrich completed the
5   Group Benefit Enrollment Form for basic and
6   supplemental life insurance coverage.  (Exh. 1 to
7   Kassan Decl., RS0103, RS0104.)  Ms. Dietrich completed
8   the application for Supplemental Life insurance
9   coverage in the amount of $260,000.  (Id. at RS0103,
10  RS0104, RS0147.)  The Group Benefit Enrollment Form
11  identified Plaintiff as the beneficiary of the Plan.[3]
12  (Id.)  Ms. Dietrich did not submit any evidence of
13  insurability or proof of good health with the Group
14  Benefit Enrollment Form in support of the application
15  for supplemental life insurance coverage.  (Id. at
16  RS0139.)  Even though the Plan specified that proof of
17  good heath is required if a person applies after the 31
18  days from the date he/she first becomes eligible,
19  neither Defendant explicitly requested that Ms.
20  Dietrich provide evidence of insurability.  (See Exh. 1
21  to Kassan Decl.)

22
23
24
25
26
_____
27  [3] Plaintiff is also the administrator of Ms.
    Dietrich's trust, which provides for Ms. Dietrich's two
28  children.  (Exh. 1 to Kassan Decl., RS0173, RS0102.)

14

1

## 3.   Insurance Claim

2

3     Ms. Dietrich died on March 28, 2010 from issues and

4  complications related to Acute Lymphoblastic Leukemia.

5  (Exh. 1 to Kassan Decl., RS0105.)  On October 27, 2010,

6  Reliance Standard requested information from Redlands

7  Hospital about Ms. Dietrich.  (Sailor Decl., ¶ 12; Exh.

8  3 to Sailor Decl., RS0159-0160.)  On December 9, 2010,

9  Redlands Hospital provided a copy of Ms. Dietrich's

10  Group Benefit Enrollment Form to reliance Standard.

11  (Sailor Decl., ¶ 13; Exh. 4 to Sailor Decl., RS0093,

12  RS0103.)

13

14     On December 16, 2010, Reliance Standard emailed

15  Redlands Hospital noting that Ms. Dietrich became

16  eligible to apply for coverage under the Plan on

17  September 10, 2006.  (Exh. 3 to Sailor Decl., RS0153.)

18  Reliance Standard advised Redlands Hospital that there

19  was no documentation showing that Ms. Dietrich provided

20  written proof of good health to obtain supplemental

21  coverage.  (Id. at RS0154.)  Reliance Standard asked

22  Redlands Hospital to provide any information it might

23  have to support supplemental life insurance coverage,

24  explaining that otherwise only basic life insurance

25  coverage was in force.  (Id. at RS0155.)

26

27

28

1   Following Ms. Dietrich's death, Plaintiff, as the
2   beneficiary of the life insurance benefits, filed a
3   claim for both basic life insurance benefits and
4   supplemental life insurance benefits. (Exh. 1 to
5   Kassan Decl., RS0056, RS0057.) Upon receipt of proof
6   of claim, Reliance Standard paid Plaintiff $97,810.39,
7   representing the $95,000 basic life insurance benefit
8   plus interest. (Exh. 9 to Sailor Decl., RS0045.) On
9   February 9, 2011, Reliance Standard denied the $260,000
10  supplemental benefit stating that "Ms. Dietrich did not
11  satisfy the policy requirements in order to obtain the
12  supplemental life insurance coverage" because she
13  failed to submit proof of her good health. (Exh. 1 to
14  Kassan Decl., RS0164-0167.) Reliance Standard asked
15  Redlands Hospital to confirm the premiums it paid on
16  Ms. Dietrich's behalf for supplemental coverage,
17  stating that it would issue a refund of that amount.
18  (Exh. 7 to Sailor Decl., RS0166.) Reliance Standard
19  also asked that Redlands Hospital refund to Plaintiff
20  any premium Ms. Dietrich paid via payroll deduction for
21  such coverage. (Id.)

22

23  On May 18, 2011, Plaintiff appealed Reliance
24  Standard's denial of her claim for supplemental life
25  insurance benefits. (Exh. 1 to Kassan Decl., RS0173-
26  0175.) On July 22, 2011, Reliance Standard upheld its
27  denial of Plaintiff's claim based on the finding that
28

1  since Ms. Dietrich failed to submit proof of good

2  health, her coverage never went into effect.  (<u>Id.</u> at

3  RS0144-0149.)

4

5  **C.   Standard of Review**

6

7      "[A] denial of benefits challenged under §

8  1132(a)(1)(B) is to be reviewed under a *de novo*

9  standard unless the benefit plan gives the

10  administrator or fiduciary discretionary authority to

11  determine eligibility for benefits or to construe the

12  terms of the plan."  <u>Firestone Tire and Rubber Co. v.</u>

13  <u>Bruch</u>, 489 U.S. 101, 115 (1989).  "If the plan gives

14  the administrator or fiduciary discretionary authority,

15  [the court] review[s] the denial of benefits for abuse

16  of discretion."  <u>Burrey v. Pac. Gas and Elec. Co.</u>, 159

17  F.3d 388, 391 (9th Cir. 1998) (internal citation

18  omitted).  "[F]or a plan to alter the standard of

19  review from the default of de novo to the more lenient

20  abuse of discretion, the plan must unambiguously

21  provide discretion to the administrator."  <u>Abatie v.</u>

22  <u>Alta Health & Life Ins. Co.</u>, 458 F.3d 955, 963 (9th

23  Cir. 2006) (en banc) (internal citation omitted).

24

25      Here, the parties do not dispute that the Plan

26  confers discretion on Reliance Standard.  The Plan

27  provides:

28

1      [Reliance Standard] shall serve as the claims
2      review fiduciary with respect to the insurance
3      policy and the Plan.  The claims review
4      fiduciary has the discretionary authority to
5      interpret the Plan and the insurance policy and
6      to determine eligibility for benefits.
7      Decisions by the claims review fiduciary shall
8      be complete, final and binding on all parties.
9  (Exh. 1 to Sailor Decl., RS0023.)  The grant of
10 discretionary authority would, normally, require an
11 abuse of discretion review.

12

13     However, the issue before the Court on this Motion
14 for Summary Judgment is whether the incontestability
15 clause bars Reliance Standard from denying payment of
16 life insurance benefits.  Since this is a question of
17 law, the Court applies a de novo review and the summary
18 judgment standard applies.  See Burrey, 159 F.3d at 392
19 (applying de novo review where there is a question of
20 law); Tremain v. Bell Industries, Inc., 196 F.3d 970,
21 977-78 (9th Cir. 1999) (where the plaintiff sued under
22 ERISA and the court determined that there was a
23 conflict of interests warranting a de novo review and
24 decided the case by summary judgment).

25

26

27

28

**D.   Incontestability Provision**

     The gravamen of Plaintiff's Motion is that the incontestability clause in the Plan precludes Reliance Standard from denying payment of the supplemental life insurance benefits.   Reliance Standard responds that the incontestability clause does not bar the denial of supplemental benefits since the supplemental life insurance coverage never went into effect.

     "A condition precedent refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties."   American Way Cellular, Inc. v. Travelers Property Casualty Co. of Am., 216 Cal. App. 4th 1040, 1054 (2013) (internal citations and quotations omitted).   "In general, conditions neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy."   Id. (internal citations and quotations omitted).   "Good health provisions are enforceable conditions precedent."   Willard v. Valley Forge Life Ins. Co., 218 F. Supp. 2d 1197, 1201 (C.D. Cal. 2002) (finding that a good health provision in a life insurance policy, which required a prospective insured's health condition remain the same between application and policy delivery dates, to be an

enforceable condition precedent to coverage under
California law).

Based on the language of the Plan, the required
proof of good health qualifies as a condition
precedent.  The Plan provides that supplemental life
insurance will go into effect on the date an individual
applies, if within 31 days of becoming eligible.  (Exh.
1 to Sailor Decl., RS0015.)  The Plan contains a 90-day
waiting period of continuous employment for employees
in the eligible class.  (Exh. 1 to Kassan Decl.,
RS0009.)  The Plan explicitly states that the
individual effective date is the date immediately
following completion of the waiting period.  (Id.)  If
an individual applies after the expiration of the 31
days, the Policy will go into effect on the date
Reliance Standard approves any required proof of good
health.  (Exh. 1 to Sailor Decl., RS0015.)

Here, Ms. Dietrich commenced her employment with
Redlands Hospital on June 12, 2006.  (Exh. 1 to Kassan
Decl., RS0147.)  The Plan's 90-day waiting period ended
on September 10, 2006.  (See Exh. 1 to Sailor Decl.,
RS0009.)  Ms. Dietrich applied for supplemental life
insurance coverage on October 30, 2006, more than 31
days after September 10, 2006.  (Exh. 1 to Kassan
Decl., RS0103, RS0104.)  Therefore, Ms. Dietrich was
required to submit proof of good health.  (Exh. 1 to

Sailor Decl., RS0015.)   Pursuant to the plain language
of the Plan, the Policy would only go into effect on
the date Reliance Standard approves the required proof
of good health.   (Id.)   There is no dispute here that
Ms. Dietrich never submitted proof of good health.
(Exh. 1 to Kassan Decl., RS0139.)   Based on these
facts, Ms. Dietrich did not fulfill a condition
precedent required by the Plan.

In Amex Life Assurance Co. v. Super. Ct., 14 Cal.
4th 1231 (1997), the plaintiff brought an action
against Amex Life Assurance Company ("Amex"), the life
insurance company that denied his claim.   Amex, 14 Cal.
4th 1234-35.   The plan contained an incontestability
clause that barred any contest after the policy has
been in force for two years.   Id. at 1233.   The insured
knew that he was HIV positive when he applied for life
insurance but lied on his application for insurance and
sent an imposter to take the mandatory medical
examination.   Id. at 1234.   Amex collected premiums for
more than two years until the insured died.   Id.
Thereafter, Amex discovered the fraud after the
beneficiary filed a claim, and it denied the claim.
Id.

Amex argued that it can contest the existence of
the contract because the medical examination was a
condition precedent to its formation.   Id. at 1245.

21

The court held that Amex's defense that the insured was not in good health at the time of the delivery of the policy was "within the scope of the [incontestability] clause which makes the policy incontestable after one year from its date if all due premiums shall have been paid, without by its terms excluding any ground of defense." Id. at 1245-46. The Court noted that "the incontestability clause protects the insured against any defense of a breach of a condition precedent where he has paid premiums beyond the period of contestability." Id. at 1246 (internal citations and quotations omitted).

Here, the Plan contains an incontestability clause which states, in part:

> Any statement made in your application will be deemed a representation, not a warranty. We cannot contest this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium.

(Exh. 1 to Kassan Decl., RS0013.) Ms. Dietrich completed the Group Benefit Enrollment Form for basic and supplemental life insurance coverage on October 30, 2006. (Id. at RS0103-0104.) Plaintiff claims that Ms. Dietrich made all premium payments from October 2006 to her death in March 2010. (Id. at RS0146-0147.) While Reliance Standard objects to Plaintiff's claim and evidence cited in its support, Reliance Standard does

not offer any evidence to show that Ms. Dietrich did
not make the premium payments.  (Def. SGD, ¶ 22.)  On
the contrary, Reliance Standard admits that upon denial
of Plaintiff's claim for supplemental life insurance
benefits, it advised Redlands Hospital to confirm the
premiums remitted on Ms. Dietrich's behalf for
supplemental coverage so that any applicable refund
could be issued.  (Id., Exh. 11 to Sailor Decl.,
RS0147.)  Reliance Standard does not deny that it
collected premiums for more than three years until Ms.
Dietrich died.  Accordingly, Plaintiff's claim that Ms.
Dietrich made all the premium payments between October
2006 and March 2010 is uncontroverted.

     Based on the standard set forth in Amex, Reliance
Standard's claim that Ms. Dietrich failed to provide
proof of good health qualifies as a defense of a breach
of a condition precedent that falls within the scope of
the incontestability clause.  Since the contestability
period expired and Ms. Dietrich fulfilled her
obligation to pay the required premium payments, the
incontestability clause applies in this case and bars
Reliance Standard from contesting the Policy.  As the
court in Amex stated, "[t]o hold otherwise would be to
permit such a clause in its unqualified form to remain
in a policy as a deceptive inducement to the insured."
Amex, 14 Cal. 4th at 1246.

1    The Court's decision comports with the public
2  policy considerations behind incorporating the
3  incontestability clause in life insurance policies.
4  The purpose of the incontestability clause is to give
5  "the insured a guaranty against possible expensive
6  litigation to defeat his claim after the lapse of many
7  years, and at the same time gives the company time and
8  opportunity for investigation, to ascertain whether the
9  contract should be in force."  Amex, 14 Cal. 4th at
10  1238 (internal citations and quotations omitted).  "The
11  need for such protection becomes especially clear for
12  life insurance policies, where the contest is usually
13  made after the named insured has died, robbing the
14  beneficiaries of their most potent witness."  Id.
15  (internal quotations omitted).
16
17    Here, Reliance Standard had more than three years
18  to investigate whether the Policy should be in force as
19  to Ms. Dietrich.  Reliance Standard did not conduct any
20  such investigation and only investigated the
21  eligibility of Ms. Dietrich for supplemental life
22  insurance coverage after her death.  (See Exh. 3 to
23  Sailor Decl., RS0153-0155.)  Therefore, the need for
24  the protection afforded by the incontestability clause
25  is highest here, where Ms. Dietrich fulfilled her
26  obligation to pay the insurance premiums for more than
27  three years, the beneficiary's most potent witness is
28

24

deceased, and Reliance Standard had ample opportunity
to conduct an investigation.

Reliance Standard argues that the incontestability
provision is inapplicable because there is no "contest"
within the meaning of the provision.  (Opp. at 16-17.)
First, Reliance Standard contends that it is not
contesting the validity of the underlying Group Plan.
Second, Reliance Standard contends that it is not
contesting Ms. Dietrich's supplemental coverage within
the meaning of the incontestability clause because it
did not deny liability by reason of fraud or
misrepresentation.  However, as the court in Amex held,
the incontestability clause applies to a contest based
on breach of a condition precedent.  Amex, 14 Cal. 4th
at 1246.  Accordingly, Reliance Standard's argument
that its denial of benefits is not a "contest" within
the meaning of the incontestability clause fails.

For the reasons set forth above, the Court finds
that the incontestability clause precludes Reliance
Standard from denying Plaintiff's claim for
supplemental life insurance benefits.

/
/
/

1

2                          **IV.  CONCLUSION**

3

4        For the reasons set forth above, the Court GRANTS

5   Plaintiff's Motion for Summary Adjudication.

6

7

8   Dated:   12/4/13

9                                    Jesus G. Bernal

10                          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28